<u>NOT FOR PUBLICATION</u>                              [Docket No. 28]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| ALBERT R. LACKMAN, | |
| Plaintiff, | Civil Action No. 06-2016 (RMB) |
| v. | |
| RECOVERY SERVICES OF NEW JERSEY, INC., trading as THE LIGHTHOUSE AT MAYS LANDING, | **OPINION** |
| Defendant. | |

Andrew M. Moskowitz
Deutsch Atkins, PC
25 Main Street Suite 104
Hackensack, NJ 07601
      Attorney for Plaintiff

William F. Maderer
Saiber, LLC
One Gateway Center 13th Floor
Newark, NJ 07102-5311
      Attorney for Defendant

**BUMB**, United States District Judge:

**Introduction:**

      This matter comes before the Court upon a motion for summary judgment filed by Defendant Recovery Services of New Jersey, Inc., doing business as the Lighthouse at Mays Landing ("Lighthouse" or "Defendant").  Plaintiff alleges that Defendant

1

violated the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), by denying his initial request for leave, giving him an unduly negative evaluation after this initial request, and terminating his employment after he took twelve weeks of medical leave. Additionally, Plaintiff alleges that Defendant violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA") by failing to provide him with 60 days of health coverage.

**Background:**

Defendant Lighthouse is a residential drug and alcohol treatment facility located in Mays Landing, New Jersey. Plaintiff Albert R. Lackman was the Director of Educational Services at the Lighthouse until he was terminated on November 30, 2005.

In or about August 2005, Plaintiff allegedly requested permission to take a leave of absence due to problems he was experiencing with insomnia, depression, and anxiety (the "Initial Request"). (Pl. SOF at ¶ 17). Plaintiff claims that the Lighthouse denied this Initial Request for leave and gave Plaintiff an unduly negative and unfair performance evaluation a few weeks later. (Id. at ¶¶ 11-14, 18).

The Lighthouse subsequently permitted Plaintiff to take a thirty-day medical leave commencing on or about September 6, 2005. (Id. at ¶ 23). At the Lighthouse's request, Plaintiff and

his health care provider completed a written form wherein Plaintiff stated that he was "unable to perform work of any kind." (See Ex. J to Moskowitz Cert.; Pl. SOF at ¶ 28).  The Lighthouse allowed Plaintiff to extend that leave twice, each for a period of thirty days, once at the end of September and again at the end of October 2005. (Def. SOF at ¶¶ 43-44; Compl. at ¶¶ 11, 13).

While Plaintiff was out on medical leave, the Lighthouse began to suspect that, despite Plaintiff's certification that he could not perform work of any kind, Plaintiff was working as a real estate agent.[1] (Def. Motion at 8-9).  The Lighthouse hired a private investigator[2] to confirm whether Plaintiff was indeed working as a real estate agent during his medical leave. (Id.). After setting up an appointment with Plaintiff, the investigator viewed several properties with Plaintiff in October 2005. (Id.). Thereafter, the investigator prepared a report for the Lighthouse

_____

[1] Plaintiff contends that the Lighthouse knew he worked as a part-time real estate agent. (Pl. Opp. at 18).  Even assuming this is true, there is a difference between Plaintiff's working as a real estate agent in general versus his working as a real estate agent specifically during the time he was on FMLA leave when he that represented he was unable to work at all. (See infra at 22).

[2] The private investigator, Patricia Borelli, and her company, Borelli Investigations, were originally named defendants in this action.  However, on November 29, 2006, this Court granted Defendant Borelli's motion to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 23).

in which she stated that Plaintiff "appeared to be healthy, upbeat and an enthusiastic salesman." (See Ex. R to Moskowitz Cert.; Compl. at ¶ 29).

On November 30, 2005, at the conclusion of his leave, Plaintiff returned to work at the Lighthouse. (Pl. SOF at ¶ 47). On that date, he met with Linda Canale, the Lighthouse's Director of Human Resources, and Peter Pacinelli, the Lighthouse's Chief Financial Officer. (Id.). During this meeting, Ms. Canale told Plaintiff that the Lighthouse was aware that he had been working as a real estate agent during his medical leave, despite the certification that he was "unable to perform work of any kind." (Def. SOF at ¶60; Compl. at ¶ 17). Plaintiff alleges that during that meeting, Ms. Canale told Plaintiff that the period in which he took leave "was the beginning of a school year, it's a very, very difficult and busy time of the year for us." (Pl. SOF at ¶ 48; Canale Dep. at 50:17-51:2). On that date, the Lighthouse terminated Plaintiff's employment. (Id.). On January 1, 2006, Plaintiff's dental and prescription medication coverage was terminated. (Compl. at ¶ 31).

**Standard for Summary Judgment:**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v.

4

Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

"In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F.Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. September 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).  "At the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

**Discussion:**

As an initial matter, Plaintiff argues that because Defendant failed to submit a response to Plaintiff's Rule 56.1 statement of material facts, those facts should be deemed admitted. (Pl. Letter, dated Sept. 10, 2007 [Dkt. No. 36]). Local Rule 56.1 provides in relevant part, "[o]n motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." Defendant submitted a statement of material facts in conjunction with its moving papers. (Def. Motion [Dkt. No. 28, Attachment No. 17]). This satisfies the requirement of Local Rule 56.1.

Plaintiff cites <u>Hill v. Algor</u>, 85 F. Supp. 2d 391, 407 n. 26 (D.N.J. 2000), for the proposition that where one party presents facts in its Rule 56.1 statement "which remain uncontested by the opposing party [they] are deemed admitted." Contrary to Plaintiff's interpretation, <u>Hill</u> does not require Defendant to submit a special document in response to Plaintiff's statement of material facts in order to contest them. Defendant addressed Plaintiff's facts in its initial statement of material facts and/or in its reply brief and, thus, these facts are neither "uncontested" nor deemed admitted. (<u>See</u> Def. Letter, dated Sept. 12, 2007 [Dkt. No. 37]).

I.   <u>FMLA CLAIMS</u>

The purpose of the FMLA is to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons...in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(1)-(3).  Pursuant to the FMLA, eligible employees are entitled to twelve unpaid work-weeks of leave during any twelve month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Once a period of such leave is complete, the employee is entitled to return to the "same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority."  29 U.S.C. § 2614 (a)(1).

A.   <u>Denial of Initial Request for Leave</u>

In his Complaint, Plaintiff asserts that "[i]n the beginning of August 2005, due to problems he was experiencing with insomnia, depression and anxiety, [Plaintiff] spoke with Linda Canale, the Lighthouse's Directors of Human Resources, and requested permission to take a leave of absence."  (Compl. at ¶ 7).  Plaintiff claims that this initial request for leave was denied, which constituted interference with Plaintiff's use of his FMLA rights.  (<u>Id.</u> ¶¶ 8, 38).

Section 2615(a)(1) provides, "[i]t shall be unlawful for an

employer to interfere with, restrain, or deny the exercise of or
the attempt to exercise, any right provided under this
subchapter."  29 U.S.C. § 2615(a)(1).  To succeed on this claim
for interference, Plaintiff must show that "he was entitled to
benefits under the FMLA and that he was denied them."  <u>Callison
v. City of Phila.</u>, 430 F.3d 117, 119 (3d Cir. 2005).

The issue underlying this claim is whether Plaintiff's
conduct in August 2005 constituted a request for leave or at
least made his employer aware of his need for leave at that time.
While a plaintiff need not specifically say that he wants FMLA
leave, he must give some notice "sufficient to make the employer
aware that the employee needs FMLA qualifying leave."  29 C.F.R.
§ 825.302(c); <u>Sarnowski v. Air Brooke Limousine, Inc.</u>, 2007
4323259 at *3 (3d Cir. Dec. 12, 2007) ("[i]n providing notice,
the employee need not use any magic words.  The critical question
is how the information conveyed to the employer is reasonably
interpreted").  Thus, "the critical test for substantively-
sufficient notice is whether the information that the employee
conveyed to the employer was reasonably adequate to apprise the
employer of the employee's request to take leave for a serious
health condition that rendered him unable to perform his job."
<u>Sarnowski</u>, 2007 WL 4323259 at *3 (quoting <u>Brenneman v. MedCentral
Health Sys.</u>, 366 F.3d 412, 421 (6th Cir. 2004)) (internal
quotations omitted).

If an employee provides enough information about a qualifying condition, the employer must seek further details. See Pinson v. Berkley Med. Res. Inc., 2005 U.S. Dist. LEXIS 13045 at *53 (W.D. Pa. June 21, 2005) ("[FMLA] regulations clearly provide that once the circumstances suggest that FMLA leave may be involved, the employer has an obligation to inquire further in order to ascertain the specific details") (internal citations omitted).  However, "[w]hile an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant."  Johnson v. Primerica, 1996 U.S. Dist. LEXIS 869 at *16 (S.D.N.Y. Jan. 30, 1996).  If an employee does not request leave or fails to notify his employer of a condition that qualifies him for leave, a plaintiff will not be able to establish that his FMLA rights have been violated.  See Blazier v. St. John Med. Ctr., Inc., 2006 U.S. Dist. LEXIS 64607 (N.D. Okla. Sept. 7, 2006)(finding that termination of plaintiff's employment was not in violation of FMLA where plaintiff failed to request leave or otherwise notify her employer of a medical condition that would qualify her for leave).

This Court notes that "[g]enerally, the sufficiency of notice is a matter for the jury."  Zawadowicz v. CVS Corp., 99 F. Supp. 2d 518, 529 (D.N.J. 2000).  However, "several circuit courts have granted or upheld summary judgment...dismissing the

plaintiff's FMLA claim where the notice supplied by the employee was patently insufficient to inform the employer of the reason for taking leave." <u>Cole v. Uni-Marts, Inc.</u>, 88 F. Supp. 2d 67, 75 (S.D.N.Y. 2000) (citing <u>Seaman v. CSCH, Inc.</u>, 179 F.3d 297, 302 (5th Cir. 1999); <u>Bailey v. Amsted Indus., Inc.</u>, 172 F.3d 1041, 1046 (8th Cir. 1999); <u>Satterfield v. Wal-Mart Stores, Inc.</u>, 135 F.3d 973, 980-81 (5th Cir. 1998); <u>Gay v. Gilman Paper Co.</u>, 125 F.3d 1432, 1436 (11th Cir. 1997)).

In this case, Plaintiff's "initial request" is patently insufficient as demonstrated by the Plaintiff's own testimony. Plaintiff testified in his deposition as follows:

> ...I walked in [to Ms. Canale's office] and on a couple of occasions I mentioned that I was feeling stressed out and I didn't know what to do.  And I had requested she could maybe find Dr. Sandler or have him committed to a time when I could sit down and discuss what I was experiencing and maybe taking some time off.

(Lackman Dep. at 147:25-148:7).  Ms. Canale referred Plaintiff to Janet Ritchie to discuss his circumstances.  (<u>Id.</u> at 148:14-20). Plaintiff testified that he recalled "leaving [Ms. Ritche] a couple messages to get-together if we can talk about a couple of circumstances" but he could not recall whether he ever told Ms. Ritchie that he wanted to take time off because he was feeling stressed from work.  (<u>Id.</u> at 149:14-150:20).  Nor could he recall whether he expressed his desire to take time off to Dr. Sandler during the August 25, 2005 meeting.  (<u>Id.</u> at 153:11-25). When asked whether he followed up with anyone about his desire to take

10

time off, Plaintiff testified that "[a]ll I can remember is being extremely indecisive as to what I should be doing and not having the time to follow-up with the people I should be following up with." (Id. at 152:8-19) (emphasis added). Thus, even Plaintiff's own testimony does not support his allegations that he requested leave in August 2005.

Moreover, unlike the cases cited in Plaintiff's opposition, here, Plaintiff had no prior history of medical concerns that would alert the Lighthouse of the need to inquire further based on Plaintiff's complaint about his stress at work. The Lighthouse had no reason to think that Plaintiff's general comments about stress were related to a serious medical condition such that it should inquire further details. Indeed, "feeling stressed out" is common to the workplace and hardly puts an employer on notice of a "qualifying condition" under FMLA. If Plaintiff felt his work stress was serious enough in August to warrant medical leave at that time, he should have made his concern clear, just as he was able to do in September, when the Lighthouse granted Plaintiff's request for leave.

Based on the record, no trier of fact could reasonably conclude that Plaintiff sufficiently conveyed his need to take leave to anyone at the Lighthouse. Without a prior history of medical issues, Plaintiff's complaints that he felt stressed at work were not sufficient to "reasonably apprise" the Lighthouse

that he needed time off for "a serious health condition" within the meaning of the FMLA.  See Woods v. Daimler Chrysler Corp., 409 F.3d 984, 992 (8th Cir. 2005) (upholding summary judgment on grounds of inadequate notice where employee expressed that he was "stressed and felt his health was at risk, but he provided no information to indicate that his absence was due to a serious health condition"); Satterfield, 135 F.3d at 980 (upholding summary judgment because note delivered to employer by employee's mother advising that employee "was having a lot of pain in her side" and would not be able to work that day was insufficient notice for FMLA purposes).  Therefore, Defendant is entitled to summary judgment on this claim.

> B.  Retaliation for requesting and taking leave

Plaintiff makes two separate allegations of retaliation. First, Plaintiff claims that in retaliation for his initial request for leave in August, he received "an unduly negative and unfair performance evaluation." (Compl. at ¶¶ 9, 39).  Second, Plaintiff claims that the Lighthouse terminated his employment in retaliation for his taking twelve weeks of leave, thereby violating the FMLA.  (Id. at ¶¶ 25, 40).

The FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made lawful" by the FMLA.  29 U.S.C. § 2615(a)(2).  To be successful on a retaliation claim, a plaintiff

must show that (1) he took an FMLA leave (or engaged in activity protected by the FMLA), (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave.  Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).

With regard to Plaintiff's first claim that he received "an unduly negative and unfair performance evaluation" in retaliation for his initial request for leave in August, Defendant is entitled to summary judgment.  As discussed above, Plaintiff's "Initial Request" in August 2005 did not suffice to serve as a request for leave under the FMLA and therefore does not constitute activity protected by the FMLA.  Since Plaintiff did not engage in protected activity in August 2005, the evaluation, regardless of whether it was unduly negative or unfair, cannot be deemed retaliatory.  Accordingly, this claim of retaliation fails.

Plaintiff's second claim that he was terminated in retaliation for taking twelve weeks of leave requires further analysis.  The parties do not dispute that Plaintiff took twelve weeks of leave (September 6 - November 29, 2005) or that the Lighthouse terminated Plaintiff upon his return to work on November 30, 2005.  Thus, the issue for the Court is whether the record reflects a material dispute of fact as to the alleged causal connection between Plaintiff's protected activity (taking

the leave) and the adverse employment action (termination).

In analyzing a retaliation claim under the FMLA, Courts generally apply the burden shifting framework established in McDonnell Douglas Corp., v. Green, 411 U.S. 792, 800-06 (1973). See Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 488-89 (D.N.J. 2002) (discussing the application of the McDonnell Douglas framework in the FMLA context).  However, where a plaintiff presents "direct evidence"[3] of retaliatory animus, the case is properly analyzed under the framework established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Conoshenti, 364 F.3d at 147 (citing Walden v. Georgia-Pacific Corp., 126 F.3d 506 (3d Cir. 1997); Woodson v. Scott Paper, 109 F.3d 913 (3d Cir. 1997)).[4]  Thus, "the court must apply Price Waterhouse or McDonnell Douglas, depending on the type of evidence proffered by the plaintiff."  Reifer v. Colonial Intermediate Unit 20, 462 F. Supp. 2d 621, 632 (M.D. Pa. 2006).  In this case, because

---

[3] Although Courts have historically "described employment discrimination cases governed by Price Waterhouse (i.e., based on direct evidence) as 'mixed motive' cases, ...more recent cases [] eschew the 'mixed motives' label in favor of the more accurate 'direct evidence' description."  Fakete v. Aetna, Inc., 203 F.3d 335, 337 n. 2 (3d Cir. 2002).

[4] Although Congress overruled the Price Waterhouse test in the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2, 2000e-5(f), that Act applies only to Title VII cases and, thus, courts continue to use the Price Waterhouse analysis in other non-Title VII discrimination cases.  See, e.g., Glanzman v. Metro. Mgt. Corp., 391 F.3d 506, 512 (3d Cir. 2004) (applying Price Waterhouse to ADEA claim); Conoshenti, 364 F.3d at 147 (applying Price Waterhouse to FMLA claim).

14

Plaintiff presents both direct and circumstantial evidence, the Court will address both the Price Waterhouse and McDonnell Douglas structures.  See, e.g., Ryan v. CBS Corp., 2007 WL 2317380 (E.D. Pa. Aug. 7, 2007).

1) Direct Evidence - Price Waterhouse[5]

Under the Price Waterhouse framework,

> when an FMLA plaintiff "alleging unlawful termination presents 'direct evidence' that his [FMLA leave] was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [the FMLA leave]."

Conoshenti, 364 F.3d at 147 (quoting Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002)).  In Price Waterhouse, Justice O'Connor explained that this burden requires the employer,

> [t]o convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor.  The employer need not isolate the sole cause for the decision; rather it must demonstrate that with the illegitimate factor removed from the calculus, sufficient business reasons would have induced it to take the same employment action.

Price Waterhouse, 490 U.S. at 276-77 (O'Conner concurrence recognized as Court's holding).

Plaintiff points to Ms. Canale's memorandum regarding the termination meeting and her deposition testimony as direct

---

[5] The Court notes that despite Plaintiff's presentation of direct evidence, neither party included in its briefing any discussion of the Price Waterhouse test.

evidence that Plaintiff's FMLA leave "played a substantial role" in the Lighthouse's decision to terminate him. (Pl. Opp. at 25-26). Specifically, Plaintiff claims that in her memo, "Ms. Canale cited two reasons for Mr. Lackman's termination: the 'violation of his FMLA papers', and the fact that, when he took "his leave, it left quite a mess with school billings, etc. ...'" (Pl. Opp at 25). Plaintiff alleges that Ms. Canale "further testified at her deposition that she told Mr. Lackman that the period in which he took leave 'was the beginning of a school year, it's a very, very difficult and busy time of the year for us.'" (Id.)

"Direct evidence" is defined as "evidence sufficient to allow a jury to find that 'the decision makers placed substantial negative reliance on [the protected activity] in reaching their decision' to fire him." Conoshenti, 364 F.3d at 147 (quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (quoting Price Waterhouse, 490 U.S. at 277) (internal quotations omitted)). The Court finds that the evidence identified by Plaintiff – Ms. Canale's memo and her testimony – does not show that the Lighthouse "placed substantial negative reliance" on Plaintiff's FMLA leave in deciding to fire him. Rather, Plaintiff has taken this evidence out of context in order to support his flawed argument.

In her memo dated November 30, 2005, Ms. Canale actually

16

wrote, "I then told [Plaintiff] that I was separating him from
the company for violation of his FMLA paper." (11/30 Canale
Mem., Moskowitz Cert., Ex. Q).  In the next paragraph, Ms. Canale
wrote, "I went on to tell Al that when he left on his leave, it
left quite a mess with school billings, etc. for as far back as
2004." (Id.).  Thus, Ms. Canale did not "cite two reasons" for
Plaintiff's termination – she cited only one, his "violation of
his FMLA papers."  The second comment is not a reason for
Plaintiff's termination, but merely a description of the billing
problem that dated back to 2004, long before Plaintiff took his
leave.

        Similarly, Plaintiff failed to recite the following relevant
testimony Ms. Canale gave in her deposition:

> Q:   [Paragraph 21 of the Complaint] states during the
>      November 30th meeting Miss Canale stated that Mr.
>      Lackman took his leave at a bad time.  See that?
>
> A:   Yes.
>
> Q:   Is that a true or a false statement?
>
> A:   I didn't tell him he took his leave at a bad time.
>      I told him that if in fact he could work he could
>      have worked here.  It was the beginning of a
>      school year, it's a very, very difficult and busy
>      time of the year for us.

(Canale Dep. at 50:18-51:2, Moskowitz Cert., Ex. B).  The Court
finds that this testimony actually supports the Lighthouse's
proffered reason for terminating Plaintiff – that the Lighthouse
terminated Plaintiff because of his misrepresentation regarding

his inability to work while on leave.  Ms. Canale's statement only bolsters Defendant's position that Plaintiff's dishonesty disappointed the Lighthouse and had a significant negative effect on its operations.

In light of the full text of the excerpts cited by Plaintiff, no factfinder could reasonably find that the Lighthouse "placed substantial negative reliance" on Plaintiff's FMLA leave in the decision to fire him.  Thus, there is no direct evidence of retaliatory animus and the Court's inquiry under Price Waterhouse need not proceed any further.  See Ryan, 2007 WL 2317380 at *7.

2) Circumstantial Evidence - McDonnell Douglas

Pursuant to the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation by showing that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the adverse action and the Plaintiff's exercise of his FMLA rights.  Tsakonas v. Nextel Communs., Inc., 2006 U.S. Dist. LEXIS 62072 at *8 (D.N.J. Aug. 31, 2006); Parker v. Hahnemann University Hospital, 234 F. Supp. 2d 478, 488 (D.N.J. 2002).  If the plaintiff establishes a prima facie case, "the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against [him] and the burden shifts to the employer 'to articulate some legitimate, non-discriminatory

18

reasons for the employee's [termination].'" Parker, 234 F. Supp. at 488 (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983); McDonnell Douglas, 411 U.S. at 802).

Once the employer offers a legitimate reason, "the presumption of discrimination 'drops from the case' and the plaintiff must show that the employer's stated reason for terminating [him] was in fact a pretext for retaliating against [him] because [he] took the protected FMLA leave." Id. at 489. Plaintiff may do this "by either (1) discrediting the reason circumstantially or directly, or (2) adducing evidence that discrimination was more likely than not a motivating or determinative cause of the action." Spagnoli v. Brown & Brown Metro, Inc., 2007 WL 2362602 at *15 (D.N.J. Aug. 15, 2007) (citing Parker, 234 F. Supp. 2d at 487).

(a)  Prima Facie Case

Here, Plaintiff points to the timing of the Lighthouse's termination of his employment – November 30, 2005, the day he returned from leave – as circumstantial evidence of retaliation. (Pl. Opp. at 27).  The Third Circuit has held that "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive'" and that "each case must be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271,

279, n. 5 (3d. Cir. 2000) (quoting <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997)).

In some cases, timing alone can be deemed "unusually suggestive" such that it may establish a plaintiff's prima facie case.  <u>See</u> <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment where timing of discharge was suggestive of discriminatory motive because employer discharged plaintiff two days after notice of his EEOC claim).  However, this is not such a case.  As confirmed at oral argument, the parties do not dispute that the Lighthouse decided to terminate Plaintiff after it discovered that he was working as a real estate agent while on FMLA leave, which was on or about October 17, 2005.  (<u>See</u> Report from Pat Borelli to Robert Auclair, dated Oct. 17, 2005, Moskowitz Cert., Ex. R).  Thus, even though Plaintiff was informed of his termination the day he returned from leave, the decision to terminate him was made at least six weeks <u>after</u> Plaintiff first requested (and was granted) FMLA leave and at least two weeks <u>after</u> he requested (and was granted) his first extension.

Based on these facts, this case is easily distinguishable from <u>Jalil</u>, where the plaintiff was discharged a mere two days after the employer received notice of the plaintiff's EEOC claim. Here, Plaintiff requested and actually took his initial 30 days of leave (and was granted a 30-day extension of leave) <u>before</u> the

Lighthouse decided to terminate him.  That the Lighthouse granted Plaintiff a second extension of leave _after_ it decided to terminate him and then waited until Plaintiff returned to work to inform him of his termination only further demonstrates that the Lighthouse respected Plaintiff's right to FMLA leave.  See Conoshenti, 364 F.3d at 148.

Taking these facts in context, the Court finds that the temporal proximity of the decision to terminate Plaintiff is not "unusually suggestive" as Plaintiff attempts to characterize it. Cf. Holpp v. Integrated Comm. Corp., 2005 WL 3479682 at *9 (D.N.J. Dec. 20, 2005) (although plaintiff was fired the day she returned to work, testimonial evidence and affidavits indicated that employer sought removal of plaintiff prior to her going on leave, thereby discounting any "unusually suggestive" timing).

### (b)  Pretext

Even assuming, _arguendo_, that Plaintiff has made out a prima facie case, the Lighthouse argues that Plaintiff was terminated "because of his deceitful and unethical conduct while on medical leave" – namely, his working as a real estate agent after representing to the Lighthouse that he was "unable to perform work of any kind." (Def. Motion at 22, 24).  This satisfies Defendant's burden and Plaintiff must now demonstrate that this reason is pretextual either by discrediting the reason or showing that discrimination was more likely than not a motivating factor

in the Lighthouse's decision.

Plaintiff first attempts to discredit the Lighthouse's proffered reason for the termination by quibbling with the characterization that he was "working" as a real estate agent. However, Plaintiff's argument over diction cannot overcome the undisputed fact that Plaintiff did indeed show the private investigator several properties in October 2005 while he was on medical leave.  This clearly contradicts Plaintiff's undisputed representation that he was "unable to perform any work of any kind" during this time.[6]

Second, Plaintiff makes much of the fact that the Lighthouse "was aware that he had outside employment as a real estate agent."  (Pl. Opp. at 18 (citing Canale Dep. at 59:18-24)). However, Defendant's general awareness that Plaintiff worked part-time in real estate means nothing as to Defendant's understanding of what Plaintiff was doing while on approved FMLA leave.  The fact remains that Plaintiff had represented to the Lighthouse that he could not do work "of any kind."  Based on

_____

[6] Plaintiff's counsel argues that the representation made in the initial certification by Plaintiff's doctor – i.e., that Plaintiff was "unable to perform any work of any kind" – applied only as to the first thirty days of Plaintiff's leave and that Defendant mistakenly assumed the certification remained true during the extensions of leave.  However, the Court finds that this is not a reasonable inference.  Additionally, counsel for Plaintiff fails to cite any authority for the proposition that Defendant bore the burden of confirming that the initial representation was still intact.

this representation, the Lighthouse reasonably expected that Plaintiff was not only unable to work at the Lighthouse, but also unable to work in real estate or anywhere else.  Yet, despite his representation that he could not work at all, Plaintiff did in fact showcase properties as a real estate agent while on leave.[7]

Finally, Plaintiff seeks to discredit Defendant's proffered reason by arguing that the Lighthouse provided "inconsistent reasons" for Plaintiff's termination.  Plaintiff's only support for this argument is Ms. Canale's response to a hypothetical question asked during her deposition:

> Q:   ...  So you feel that because Mr. Lackman's doctor wrote that he was unable to perform work of any kind in 7A rather than 7B saying he wasn't able to perform the essential functions of the job, that he should not have been working as a real estate agent, is that your position?
>
> A:   Yes.
>
> Q:   And if she had filled out 7B and suggested 7B rather than 7A, the Lighthouse would have no objection to Mr. Lackman working as a real estate agent?
>
> A:   <u>I don't know what I would have done if he had sent that in.</u>  Most likely I would have asked for another opinion but I don't know that.  ...

---

[7] At oral argument, counsel for Plaintiff argued that Plaintiff's real estate activity while on leave should not be considered a violation of his FMLA because Plaintiff was allegedly "entrapped" by Defendant's private investigator.  The Court finds no merit in this argument; whether the investigator's request to view properties constituted "entrapment" is irrelevant.  What is relevant is Plaintiff's response to that request – i.e., he agreed to show her the properties.

23

(Canale Dep. 67:13-68:9) (counsel objections omitted) (emphasis added).  Plaintiff's counsel argues that Ms. Canale's answer of "I don't know" is inconsistent with the Lighthouse's proffered reason and thus establishes pretext.

The Court finds that Ms. Canale's answer to the hypothetical question is mere speculation and is not probative as to the actual motivation for the Lighthouse's decision to terminate Plaintiff.  If parties to a dispute could succeed in raising an issue of fact merely by positing hypothetical questions that elicit speculative responses, summary judgment would never be appropriate.

Even if the Court were to consider Ms. Canale's speculative response, Plaintiff's counsel failed to clarify what she meant by "I don't know."  Contrary to Plaintiff's inference, Ms. Canale's answer is not necessarily, or even reasonably, interpreted as being inconsistent with Defendant's proffered reason.  In fact, the second sentence of Ms. Canale's response actually suggests that she did not know whether Plaintiff's real estate activity would have violated his FMLA leave if he had indicated he could do "some work" – i.e., that she would have wanted a second opinion.  Had Plaintiff's doctor certified that he could do "some work," perhaps Plaintiff would not have been terminated, or perhaps Plaintiff would have been working in some other capacity at the Lighthouse instead of taking leave altogether.  Perhaps

24

this lawsuit never would have been filed.  The possibilities of
what could have happened had the doctor checked the 7B box are
many, and the Court need not engage in a guessing game.  This is
precisely why responses to such hypothetical questions are not
probative in this context.

Given the undisputed facts and the speculative nature of the
allegedly "inconsistent" testimony given by Ms. Canale, the Court
finds that Plaintiff has failed to discredit the Lighthouse's
proffered reason for terminating Plaintiff.  Moreover, as
discussed above, neither the alleged temporal proximity nor
Plaintiff's so-called "direct evidence" shows that discrimination
was more likely than not a motivating factor in the decision to
fire Plaintiff.  Accordingly, the Lighthouse is entitled to
summary judgment on Plaintiff's claims for retaliation under the
FMLA.

2.  <u>COBRA CLAIMS</u>

Plaintiff alleges that the Lighthouse "failed to properly
provide plaintiff with up to sixty (60) days to elect to continue
his [health] coverage" and terminated his coverage on January 1,
2006 in violation of COBRA.  (Compl. at ¶ 44).  In support of his
claim, Plaintiff argues that he relied on a statement allegedly
made by Ms. Canale at his termination meeting on November 30,
2005.  Plaintiff testified, "I figured that I had a time period

25

of two months which was indicated at my termination meeting that there would be coverage for two months." (Lackman Dep. 210:10-13, Maderer Cert., Ex. A).

Defendant argues that Plaintiff was properly given 60 days to make his COBRA election but simply failed to do so. First, Defendant denies that "anyone from the Lighthouse ever told [Plaintiff] that he was entitled to health insurance for two months without filling out the necessary paperwork or paying the premiums." (Def. Reply at 14). Rather, Defendant claims that Plaintiff was told at his termination meeting on November 30, 2005 that he would "soon receive a package regarding his benefits and rights under COBRA[,]" that such package was in fact sent to Plaintiff on December 5, 2005, and that the letter included in the package explicitly stated that Plaintiff had 60 days to make his coverage election. (Def. Motion at 26; December 5, 2005 COBRA package, Maderer Aff., Exhibit L). Second, Defendant claims that although a terminated employee's health coverage is typically terminated on the last day of the month during which the separation occurs, because Plaintiff was separated on November 30, 2005, "the Lighthouse maintained Plaintiff's insurance coverage throughout December, 2005 as a courtesy." (Def. Motion at 26).

The factual dispute as to whether Plaintiff was told at his termination meeting that his coverage would continue for two

months has no bearing on the issue of whether Plaintiff was given sixty days to make his coverage election under COBRA.  Whether or not such representation was made, it is undisputed that Defendant sent Plaintiff a COBRA package on December 5, 2005 and that Plaintiff received this package on December 10, 2005.  (Maderer Aff., Exs. L, M).  The letter in this package was patently clear – it stated, "You have sixty days(60) days from the date of your termination to make your election." (December 5, 2005 COBRA package, Maderer Aff., Exhibit L).  The letter also stated, "[i]f we do not receive your payments by February 1, 2006, we will assume that you do not wish to continue this coverage." (Id.). Thus, to the extent Plaintiff claims that Defendant violated COBRA by failing to provide him sixty days to elect continuation of his coverage, the evidence is clear that Defendant complied with the notice requirement and, thus, this claim fails.

Based on Plaintiff's Complaint and deposition, it appears that Plaintiff confused the requisite 2-month election period under COBRA with the "courtesy" 1-month continuation of coverage provided by the Lighthouse.  To the extent Plaintiff claims that he relied to his detriment on the alleged promise of two months of coverage under the Lighthouse policy and was only given one month of coverage, such promissory estoppel claim was not raised in the Complaint and, as such, is not before the Court.  Even if it were, such claim would be a state claim (counsel for Plaintiff

properly acknowledged this issue at oral argument), over which this Court would decline to exercise supplemental jurisdiction. See 28 U.S.C. 1367(c) ("district court [] may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction"); Lucas v. Allegheny Valley Land Trust, 137 Fed. Appx. 450, 452 (3d Cir. 2005) (unpublished) (finding that district court did not err in declining to exercise supplemental jurisdiction over remaining state law claims).

**Conclusion:**

In conclusion, Defendant is entitled to summary judgment on all of Plaintiff's remaining claims.  An accompanying Order will issue this date.


Dated: February 13, 2008           s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    UNITED STATES DISTRICT JUDGE